## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINIOS
## EASTERN DIVISION

LGP REALTY HOLDINGS LP, a Delaware
Limited Partnership, LEHIGH GAS
WHOLESALE LLC, a Delaware Limited
Liability Company, and CROSSAMERICA
PARTNERS LP, a Delaware Limited
Partnership,

     Plaintiffs,          Case No. 20-cv-07329

vs.

GRAYSLAKE STOP & SHOP, LLC, an Illinois
Limited Liability Company and LOUAY
ALANI,

----------------------------------

GRAYSLAKE STOP & SHOP, LLC, an Illinois
Limited Liability Company and LOUAY
ALANI,

     Counter-Plaintiffs,

vs.

LGP REALTY HOLDINGS LP, a Delaware
Limited Partnership, LEHIGH GAS
WHOLESALE LLC, a Delaware Limited
Liability Company, and CROSSAMERICA
PARTNERS LP, a Delaware Limited
Partnership,

     Counter-Defendants.

## ANSWER WITH AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

  Defendants, Grayslake Stop & Shop, LLC and Louay Alani by and through their

attorneys Cynthia Rote and Integrate Legal, P.C., answering Plaintiffs' LGP REALTY

HOLDINGS LP, a Delaware Limited Partnership, LEHIGH GAS WHOLESALE LLC, a

Delaware Limited Liability Company, and CROSSAMERICA PARTNERS LP, a Delaware

Limited Partnership, Complaint state as follows:

1. The Defendants are the tenant and manager of a gas station in Grayslake, Illinois, who
   lease the property from Plaintiffs. Defendants' lease has expired but they refuse to
   surrender the property to Plaintiffs, who are now suffering ongoing damages. This willful
   holding over violates not only the lease but a 2019 settlement agreement necessitated by
   Defendants' previous erratic and unlawful behavior and attempts to harm Plaintiffs.

**ANSWER: Denied.**

2. This action is brought to remedy the Defendants' breach of the parties' lease and
   settlement agreement and their continued refusal to vacate Plaintiffs' property. Plaintiffs
   seek all available damages for the harm they have suffered as a direct and proximate
   result of Defendants' conduct and seek to evict Defendants from the Property.

**ANSWER: Denied.**

3. Plaintiff LGP Realty Holdings LP is a Delaware limited partnership with its primary
   place of business in Pennsylvania.

**ANSWER: Admit.**

4. Plaintiff Lehigh Gas Wholesale LLC is a Delaware limited liability company with its
   primary place of business in Pennsylvania.

**ANSWER: Admit**

5. Plaintiff CrossAmerica Partners LP is a Delaware limited partnership with its primary
   place of business in Pennsylvania.

**ANSWER: Admit**

6. Defendant Grayslake Stop & Shop, LLC is an Illinois limited liability company with its primary place of business in Illinois.

**ANSWER: Admit**

7. Defendant Louay Alani is the sole manager of Grayslake Stop & Shop, LLC, and an individual and resident of the state of Illinois.

**ANSWER: Admit**

8. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

**ANSWER: Admit**

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in this district and Section 35.3 of the Grayslake Lease (as defined below) lays venue in this district.

**ANSWER: Admit**

10. In October 2014, several companies operated by Alani entered into lease and fuel supply agreements with PT, L.L.C.; BAPA, L.L.C.; and State Oil Company for three gas stations located in northern Illinois. The leased parcels on which Alani operated the gas stations are located in Woodstock, Ingleside and Grayslake.

**ANSWER: Admit.**

11. The gas station in Grayslake, located at 735 Belvidere Road (the "Grayslake Property"), was leased to Defendant GS&S pursuant to that certain Lease dated October 22, 2014 by



and between PT, L.L.C.; BAPA, L.L.C.; and State Oil Company and Grayslake Stop & Shop, LLC (the "Grayslake Lease").

**ANSWER: Admit**

12. In September 2016, Plaintiffs purchased a portfolio of gas stations from PT, L.L.C. and BAPA, L.L.C., including the three gas stations Alani operated in Woodstock, Ingleside and Grayslake. By virtue of this transaction, Plaintiffs were assigned all the prior owners' rights and remedies as landlord under the existing leases and fueling agreements, including the Grayslake Lease.

**ANSWER: Defendants admit that Plaintiffs purchased the gas stations Alani operated in Woodstock and Grayslake. Defendant denies that Plaintiff purchased the Ingleside Property and affirmatively states that Plaintiff assumed a Note on the Ingleside Property. Defendants are without information or belief to admit or deny what a "portfolio of gas stations" refers to. Defendants are without information or belief to admit or deny what rights and remedies were assigned to Plaintiffs and demands strict proof thereof.**

13. Several months later, in December 2016, Plaintiffs transferred ownership of the Grayslake Property to National Retail Properties, LP ("NRP") in a "sale-leaseback" transaction. A sale-leaseback transaction is a common real estate transaction in which the owner of real estate sells the real property to and simultaneously leases it back from a buyer. This allows a seller to deploy its capital elsewhere and provides a buyer with an immediately cash-flowing asset.

**ANSWER: Defendant admits that Plaintiffs transferred ownership of the property in December 2016. Defendant is without information or belief as to admit or deny what Plaintiffs refer to using the term "sale-leaseback" transaction. Defendant is without**

information or belief to admit or deny the remaining allegations and demands strict proof
thereof.

14. Under the terms of the sale-leaseback agreement between Plaintiffs and NRP, Defendant
    GS&S's leasehold interest in the Grayslake Property was undisturbed and Defendant
    GS&S continued to enjoy its rights as tenant under the Grayslake Lease, just as it had
    before the sale-leaseback.

**ANSWER: Defendant is without information or belief as to admit or deny what Plaintiffs
refer to using the term "sale-leaseback" agreement. Defendant admits it continued to
operate out of the Grayslake Property and rent was credited from Defendants' credit card
accounts which customers paid into when they purchased gas from the pump.**

15. The Grayslake Lease contains no requirement that GS&S be provided notice that the
    underlying property would be sold, let alone a requirement that GS&S provide consent to
    such a transaction, so long as GS&S's rights under the lease were not disturbed.
    Moreover, the Plaintiffs' master lease with NRP expressly incorporated the GS&S lease
    as a permitted and acknowledged sublease.

**ANSWER: Denied.**

16. Section 1.2 of the Grayslake Lease provides as follows: "The Initial Term of this lease
    shall be a period commencing on October 26, 2014 and terminating on October 31, 2017
    (unless sooner terminated as herein provided)." (Grayslake Lease § 1.2, a true and correct
    copy of which is attached as Exhibit A at 2.)

**ANSWER: Admit.**

17. Section 1.2.1 of the Grayslake Lease provided Defendant GS&S with one option to
    extend the Grayslake Lease for an additional three years. Specifically, the lease provides,

---



"Tenant is hereby given one (1) option to extend the Lease. The option is for an additional three (3) year term. Tenant must give Landlord sixty (60) days notice in writing of its election to exercise either option. Tenant must also have not defaulted on any portion of the Lease or Supply Agreement at any time in order to exercise option." (Grayslake Lease § 1.2.1; Exhibit A at 2.)

**ANSWER: Admit.**

18. The original term of the Grayslake Lease was from October 26, 2014 to October 31, 2017. Defendant GS&S exercised the option provided for in Section 1.2.1, which extended the term of the term of the Grayslake Lease from November 1, 2017 to October 31, 2020.

**ANSWER: Admit.**

19. The Grayslake Lease further provides that "upon expiration or termination of the Lease, either by lapse of time or otherwise, [Defendant GS&S] agrees to peaceably surrender the Premises[.]" (Grayslake Lease § 22.1; Exhibit A at 17–18.)

**ANSWER: Admit.**

20. In the event of a holdover by the tenant, the Grayslake Lease vests the landlord with the discretion to renew the lease by written notice to Defendant GS&S. However, no such notice was provided. The Grayslake Lease provides that in the absence of written notice renewing or extending the lease, "a tenancy at sufferance . . . shall have been created." (Grayslake Lease § 22.2; Exhibit A at 18.)

**ANSWER: Admit Plaintiffs did not provide notice. No further response is required as this is a recitation of the lease. To an extent a response is deemed required, Defendants state that Plaintiffs properly quote the lease and deny all remaining allegations.**

21. Finally, the Grayslake Lease provides that "[i]f either party shall be made a party to any litigation commenced against the other party relating to the other party's use of occupancy of the Premises, and the first party shall not be found to be at fault, then the other party shall pay all costs, expenses and attorneys' fees incurred or paid by the first party in connection with such litigation." (Grayslake Lease § 23; Exhibit A at 18.)

**ANSWER: No response is required as this is a recitation of the lease. To an extent a response is deemed required, Defendants state that Plaintiffs properly quote the lease.**

22. From October 2016 until summer 2017, Alani's businesses paid rent to and purchased fuel from Plaintiffs in accordance with the existing leases and fueling agreements relative to the Woodstock, Ingleside and Grayslake properties.

**ANSWER: Admit the businesses paid rent to and purchased fuel from Plaintiffs. Deny that said was done in accordance with existing leases and fueling agreement relative to the Woodstock, Ingleside and Grayslake properties.**

23. In 2017, Alani's businesses, including Defendant GS&S, failed to pay Plaintiffs for fuel that had been delivered to the Woodstock, Ingleside and Grayslake gas stations and began purchasing petroleum from other sellers. Litigation inevitably ensued.

**ANSWER: Admit.**

24. Defendants filed a civil action in this Court styled Catch 26, LLC et al. v. LGP Realty Holdings, LP, et al., Civil Action No. 1:17-cv-06135. The action was assigned to Judge Sharon Johnson Coleman. Defendants alleged that Plaintiffs violated the Petroleum Marketing Practice Act, 15 U.S.C. § 55, and Plaintiffs countersued for, among other things, breach of the relevant leases and supply agreements, trademark violations, and trespass (the "Prior Litigation").



**ANSWER: Admit.**

25. The claims in the Prior Litigation were resolved pursuant to that certain Settlement
Agreement dated January 31, 2019 (the "Settlement Agreement"). Under the Settlement
Agreement, Plaintiffs agreed to and did sell the Woodstock and Ingleside properties to
Defendants.

**ANSWER: Admit Plaintiffs sold Woodstock property to Defendants. State that Defendants
already had a Note on the Ingleside Property and the Plaintiffs allowed Defendants to close
on note.**

26. Because Plaintiffs had previously sold the Grayslake Property to National Retail
Properties (as Alani knew), they could not sell it to Alani. Rather, the Settlement
Agreement obligated Defendants GS&S and Alani to lease the Grayslake Property
"pursuant to the terms and conditions of the Grayslake Lease dated October 22, 2014 . . .
until October 31, 2020 . . ." (Settlement Agreement § 3, a copy of which is attached as
Exhibit B at 3–4.)

**ANSWER: Admit that Plaintiffs sold the Property. Admit the Settlement Agreement is
correctly quoted. Deny that Alani knew who Plaintiffs sold the Property to, the terms and
conditions of that sale and the interests in the Property that remained with Plaintiffs. Deny
all other allegations contained in this Paragraph.**

27. Due to Defendants' behavior and wishing to avoid an indefinitely extended business
relationship with them, Plaintiffs ensured their lease would have a certain end date. The
termination date of the Grayslake Lease was a material provision of the Settlement
Agreement and was incorporated as such, and it is the same termination date provided for
in the Grayslake Lease itself, in the event Defendants would have exercised their option



to extend the term of the Grayslake Lease: October 31, 2020. (Grayslake Lease §§ 1.2,

1.2.1; Exhibit A at 2.)

**ANSWER: Denied.**

28. Under Section 12 of the Settlement Agreement, the parties agreed that if the Settlement

Agreement were breached, the non-breaching party would be entitled to all attorneys'

fees incurred in connection with the Prior Litigation leading to the settlement. In

particular, the Settlement Agreement provides:

> In the event of a Breach of this Settlement Agreement by any party, the non-breaching party shall be entitled to recover all attorneys' fees incurred in connection with the Litigation ('the Breach Fee'). The provisions of this Section relating to the Breach Fee are an integral part of the transactions contemplated by this Settlement Agreement, that the damages resulting from the breach of this Agreement are uncertain and incapable of accurate calculation and that the amount payable hereunder is a reasonable forecast of the actual damage that either party would incur in the event of a Breach of this Settlement Agreement. The Breach Fee is intended to and shall constitute liquidated damages, and shall not be a penalty.

(Settlement Agreement § 12; Exhibit B at 6.) As of October 2020, Plaintiffs' attorneys' fees in the

Prior Litigation exceed $250,000.

**ANSWER: Admit Section 12 of the Settlement Agreement is properly quoted. Deny all**

**remaining allegations.**

29. Despite the termination of the Grayslake Lease on October 31, 2020 and Defendant

GS&S's obligation to "peaceably surrender" possession of the Grayslake Property, and

multiple notices from Plaintiffs—as well as the utter clarity of the Grayslake Lease and

the Settlement Agreement as to the termination date of the Grayslake Lease—Defendant

GS&S has refused to vacate the Grayslake Property as of October 31, 2020.

Consequently, Defendants are in breach of the Grayslake Lease and the Settlement

Agreement.

**ANSWER: Denied.**

30. Defendants contend they are not obligated to surrender possession of the Grayslake Property. They argue that by Plaintiffs' engaging in a sale-leaseback transaction for the Grayslake Property, Plaintiffs lost any and all interest in the Grayslake Property notwithstanding: (a) Plaintiffs' continued leasehold interest in the Grayslake Property and (b) the parties' continued performance under the Grayslake Lease for several years following the sale-leaseback.

**ANSWER: Admit that Defendants contend they are not obligated to surrender possession. Admit Plaintiff continued operating out of the Property.  Deny the remaining allegations as they are legal arguments that require no response.**

31. Plaintiffs have had an uninterrupted interest in the Grayslake Property since acquiring it, first as a fee interest and later as a leasehold interest. Defendants knew full well that Plaintiffs no longer owned the property at the time of the Settlement Agreement, which is why the Settlement Agreement did not provide for Alani to purchase the Grayslake Property as he did the Ingleside and Woodstock parcels.

**ANSWER: Denied. Defendant affirmatively states that it relied upon representations of Plaintiffs that they were the landlord of the Property at the time of the settlement agreement.**

32. In furtherance of Defendant GS&S's attempts to interfere with Plaintiffs' right to occupy the Grayslake Property, on October 27, 2020, Defendants filed that certain Motion for Declaratory Relief on the long-closed docket of the Prior Litigation. Defendants argued that because Plaintiffs allegedly lacked a legal interest in the Grayslake Property, they had no right to remove the Defendants from the Grayslake Property nor bring their Prior

Litigation counterclaims against Defendants, let alone settle those claims under the terms of the Settlement Agreement. On that basis, Defendants argued the Settlement Agreement should be vacated. (See Civil Action No. 17-cv-06135, Dkt. 165.)

**ANSWER: Deny that the Motion was filed in furtherance of attempts to interfere with Plaintiffs' rights. Admit the Moton was filed. State the Motion speaks for itself and deny any inferences relating to said Motion that are not contained within the motion.**

33. Judge Coleman summarily denied Defendants' motion without additional briefing after a short telephonic hearing. (Civil Action No. 17-cv-06135, Dkt. 169.)

**ANSWER: Admit and further State Judge Coleman stated she no longer had jurisdiction relating to the Agreement.**

34. After Defendants' motion was denied, Plaintiffs sent additional notices demanding Defendants vacate the Grayslake Property. Defendants have not responded to Plaintiffs' letters and have refused to vacate the Grayslake Property. Accordingly, Plaintiffs seek the immediate eviction of Defendant GS&S from the Grayslake Property.

**ANSWER: Admit.**

35. The harm Plaintiffs have suffered due to Defendant GS&S's continued refusal to vacate the Grayslake Property is both real and concrete. Plaintiffs are unable to lease the Grayslake Property or sell fuel to another tenant to whom they planned to sublease following the end of Defendants' lease term, which has resulted in the loss of increased revenues from a new operator, lost rent, and loss of goodwill. Plaintiffs have also needlessly incurred attorneys' fees in defending against Defendants' specious claims. In addition, Defendants continue to wrongfully accrue revenue by continuing their business operations on the Grayslake Property, which they have no right to occupy or possess.



**ANSWER: Admit Defendant has not vacated the Property. Deny remaining allegations.**

36. As tenants at sufferance, Defendants have no right to any pre-eviction notice period under Illinois law, and Plaintiffs may pursue their immediate removal. Plaintiffs also seek damages associated with Defendants' breach of the Grayslake Lease and the Settlement Agreement, including the Breach Fee.

**ANSWER: No answer required as this paragraph is a legal conclusion. To the extent an Answer is deemed to be required Defendants admit Plaintiffs seeks damages and deny they are due any.**

### COUNT ONE: BREACH OF CONTRACT AGAINST GRAYSLAKE STOP & SHOP

37. Plaintiffs incorporate by reference paragraphs 1–36 above, as though each were more fully set forth herein.

**ANSWER: Defendants incorporate by reference their responses to paragraph 1-36 above, as though each were more fully set forth herein.**

38. In October 2014, Defendants entered into the Grayslake Lease, a valid lease, with the prior owners of the Grayslake Property.

**ANSWER: Admit.**

39. In September 2016, Plaintiff LGP purchased the Grayslake Property and was assigned all the landlord's rights and obligations under the Grayslake Lease. LGP and GS&S continued to operate under the Grayslake Lease as landlord and tenant.

**ANSWER: Admit.**

40. In December 2016, LGP's interest in the Grayslake Property converted from fee to leasehold. Thereafter, the parties continued to operate under the Grayslake Lease as



tenant and subtenant. GS&S continued to pay rent to LGP, and LGP continued to operate as effective landlord, as is standard in sale-leaseback transactions.

**ANSWER: Defendant is without information or belief as to admit or deny what Plaintiffs refer to using the term "leasehold". Defendant admits it continued to operate out of the Grayslake Property and Plaintiffs deducted rent from GRAYSLAKE STOP & SHOP checking account using an authorization provided to the prior owner.**

41. The Grayslake Lease explicitly terminated on October 31, 2020. Under the Lease, "upon expiration or termination of the Lease," Defendants were obligated to peaceably surrender the Grayslake Property.

**ANSWER: Denied.**

42. Defendants have refused to vacate the Grayslake Property and are thus in breach of the Grayslake Lease.

**ANSWER: Admit Defendants have not vacated the Property, Deny all remaining allegations.**

43. By virtue of Defendants' material breach, Plaintiffs have been damaged and will continue to be damaged in an amount which has not yet been finally determined but, in no case, less than the jurisdiction limit of this Court.

**ANSWER: Denied.**

**WHEREFORE, Defendants pray this Honorable Court enter a judgment in their favor and against Plaintiffs and Dismiss this Complaint with Prejudice, Award Plaintiffs' their attorneys' fees and costs and any other relief this Court deems just and equitable.**

**COUNT TWO: BREACH OF CONTRACT AGAINST GRAYSLAKE STOP & SHOP AND ALANI**



44. Plaintiffs incorporate by reference paragraphs 1–43 above, as though each were more fully set forth herein.

**ANSWER: Defendants incorporate by reference their responses to paragraph 1-43 above, as though each were more fully set forth herein.**

45. On January 31, 2019, each party to this lawsuit executed the Settlement Agreement to settle their existing dispute in the Prior Litigation.

**ANSWER: Admit an agreement was executed. Deny it was executed in good faith.**

46. All parties subsequently performed their obligations under the Settlement Agreement; these obligations included Plaintiffs' sale and Defendants' purchase of the Woodstock and Ingleside properties.

**ANSWER: Admit Defendants performed their obligations. Deny that Plaintiff's preformed their obligations.**

47. The Settlement Agreement also obligated the Defendants to "continue to lease the Grayslake Property pursuant to the terms and conditions of the Grayslake Lease," which, per the express terms of the Settlement Agreement, ended on October 31, 2020.

**ANSWER: Admit that the settlement agreement is accurately quoted.**

48. By refusing to vacate the Grayslake Property after October 31, 2020 and thereby violating the terms of the Grayslake Lease, Defendants are in breach of the Settlement Agreement.

**ANSWER: Denied.**

49. Defendants additionally breached the Settlement Agreement by filing that certain Motion for Declaratory Relief in the Prior Litigation, which sought to declare the Settlement Agreement null and void.



**ANSWER: Denied.**

50. Because Defendants breached the Settlement Agreement, Defendants owe Plaintiffs the amount of attorneys' fees Plaintiffs incurred in the Prior Litigation leading up to the execution of the Settlement Agreement (See Settlement Agreement § 12; Exhibit B at 6.)

**ANSWER: Denied.**

51. By virtue of Defendants' material breach, Plaintiffs have been damaged and will continue to be damaged in an amount which has not yet been finally determined but, in no case, less than the jurisdiction limit of this Court.

**ANSWER: Denied.**

**WHEREFORE, Defendants pray this Honorable Court enter a judgment in their favor and against Plaintiffs and Dismiss this Complaint with Prejudice, Award Plaintiffs' their attorneys' fees and costs and any other relief this Court deems just and equitable.**

**COUNT 3: EVICTION UNDER ILLINOIS LAW AGAINST GRAYSLAKE STOP & SHOP**

52. Plaintiffs incorporate by reference paragraphs 1–51 above, as though each were more fully set forth herein.

**ANSWER: Defendants incorporate by reference their responses to paragraph 1-51 above, as though each were more fully set forth herein.**

53. Under Illinois law, an eviction action can be maintained "[w]hen any lessee of the lands or tenements, or any person holding under such lessee, holds possession without right after the termination of the lease or tenancy by its own limitation[.]" 735 ILCS § 5/9-102(a).

---

**ANSWER: No response is required as this is a recitation of law. To the extent a response is deemed required, Defendants state the law is properly recited, but not recited in full.**

54. Furthermore, "[w]hen the tenancy is for a certain period, and the term expires by the terms of the lease, the tenant is then bound to surrender possession, and no notice to quit or demand of possession is necessary." Id. § 5/9-213.

**ANSWER: No response is required as this is a recitation of law. To the extent a response is deemed required, Defendants state the law is properly recited.**

55. Defendant GS&S continues to hold possession over the Grayslake Property after the term of the Grayslake Lease expired, with no right to do so.

**ANSWER: Denied.**

56. Plaintiffs are entitled to immediate possession of the Grayslake Property and are without adequate remedy at law.

**ANSWER: Denied.**

57. As a tenant at sufferance following the termination of a tenancy for a certain period, Defendant GS&S must surrender possession of the Grayslake Property immediately.

**ANSWER: Denied.**

58. Based on the foregoing, Plaintiffs are entitled to a warrant mandating the ejectment and eviction of Defendant GS&S, its agents, servants, employees, representatives and assigns, and all persons acting in concert or participation with it from the Grayslake Property.

**ANSWER: Denied.**

**WHEREFORE, Defendants pray this Honorable Court enter a judgment in their favor and against Plaintiffs and Dismiss this Complaint with Prejudice, Award Plaintiffs' their attorneys' fees and costs and any other relief this Court deems just and equitable.**

### COUNT 4: TRESPASS AGAINST GRAYSLAKE STOP & SHOP

59. Plaintiffs incorporate by reference paragraphs 1–58 above, as though each were more fully set forth herein.

**ANSWER: Defendants incorporate by reference their responses to paragraph 1-58 above, as though each were more fully set forth herein.**

60. The Lease on the Grayslake Property terminated on October 31, 2020, at which time Defendant GS&S was immediately required to vacate the Grayslake Property.

**ANSWER: Denied.**

61. To date, Defendant GS&S has intentionally remained and continues to intentionally remain on the Grayslake Property without authorization or permission, in violation of the Grayslake Lease.

**ANSWER: Denied.**

62. As a result of Defendant GS&S's continuing act of trespass, Plaintiffs have been damaged and will continue to suffer damages for as long as Defendant GS&S remains wrongfully at the Grayslake Property in an amount yet to be finally determined but, in no case, less that the jurisdictional limit of this Court.

**ANSWER: Denied.**

**WHEREFORE, Defendants demand a jury trial and pray this Honorable Court enter a judgment in their favor and against Plaintiffs and Dismiss this Complaint with Prejudice, Award Plaintiffs' their attorneys' fees and costs and any other relief this Court deems just and equitable.**

### COUNT 5: HOLDOVER RENT – AGAINST GRAYSLAKE STOP & SHOP

63. Plaintiffs incorporate by reference paragraphs 1–62 above, as though each were more fully set forth herein.

**ANSWER: Defendants incorporate by reference their responses to paragraph 1-62 above, as though each were more fully set forth herein.**

64. The Grayslake Lease terminated on October 31, 2020 and, despite notice from Plaintiffs, Defendant GS&S has continued to occupy the Grayslake Property.

**ANSWER: Denied.**

65. Illinois law provides, "If any tenant . . . wilfully holds over any lands, tenements or hereditaments, after the expiration of his or her term or terms, and after demand made in writing, for the possession thereof, by his or her landlord, or the person to whom the remainder or reversion of such lands, tenements or hereditaments belongs, the person so holding over, shall, for the time the landlord or rightful owner is so kept out of possession, pay to the person so kept out of possession, or his or her legal representatives, at the rate of double the yearly value of the lands, tenements or hereditaments so detained to be recovered by a civil action." 735 ILCS 5/9-202.

**ANSWER: No response is required as this is a recitation of law. To the extent a response is deemed required, Defendants state the law is properly recited, but not recited in full.**

66. Defendants have willfully and without justification held over the Grayslake Property after the term of the Grayslake Lease, despite written notice from Plaintiffs. As such, they owe double rent for the time during which they deprive Plaintiffs of possession of the Grayslake Property.

**ANSWER: Denied.**

**WHEREFORE, Defendants pray this Honorable Court enter a judgment in their favor and against Plaintiffs and Dismiss this Complaint with Prejudice, Award Plaintiffs' their attorneys' fees and costs and any other relief this Court deems just and equitable.**

<u>**AFFIRMATIVE DEFENSES**</u>

<u>**First Affirmative Defense**</u>

Plaintiff's Compliant should be dismissed as it fails to state a claim upon which relief may be granted.

<u>**Second Affirmative Defense**</u>

Each of Plaintiff's claims is barred, in whole or in part, by the doctrine of laches, waiver, and estoppel.

<u>**Third Affirmative Defense**</u>

Plaintiffs failed to exercise reasonable measures to mitigate their damages and, in fact, failed to mitigate their damages, if any.

<u>**Fourth Affirmative Defense**</u>

To the extent, if any, that Plaintiffs have sustained damages, such damages might have been, and were not, avoided by Plaintiffs by reasonable effort without undue risk or expense.

<u>**Fifth Affirmative Defense**</u>

This Court does not have subject matter jurisdiction over all of Plaintiffs' claims.

<u>**Sixth Affirmative Defense**</u>

Each of Plaintiffs' claims is barred, in whole or in part by bad faith and unclean hands.

<u>**Seventh Affirmative Defense**</u>

Plaintiffs have no contractual privity with Defendants.

<u>**Eight Affirmative Defense**</u>



Integrate Legal, PC
Service@Integrate-Legal.com

ANSWER, AFFIRMATIVE
DEFENSES & COUNTER-CLAIMS

If Plaintiffs did have privity of contract with Defendants Plaintiffs breached the settlement agreement first by violating the terms of the supply agreements.

### Ninth Affirmative Defense

If Plaintiffs did have privity of contract with Defendants Plaintiffs breached the settlement agreement first by violating the terms of the lease.

### Tenth Affirmative Defense

Any recovery by Plaintiffs be offset by the amount owed to Defendants resulting from the overcharging of fees and gasoline associated with the Grayslake Property.

### Eleventh Affirmative Defense

Any recovery by Plaintiff must be offset by the amounts owed to Defendants resulting from overcharging of maintenance fees and other fees associated with the Grayslake Property.

### Twelfth Affirmative Defense

If Plaintiffs have a valid property interest in the Grayslake Lease, by accepting rent from Defendants after October 31, 2020, Plaintiffs renewed the lease.

### Thirteenth Affirmative Defense

Plaintiffs claims are barred by their fraudulent actions and misrepresentations relating to the Settlement Agreement.

**WHEREFORE, Defendants respectfully request that this Honorable Court enter a judgment in their favor:**

**a. Dismissing the Complaint and each and every cause of action therein;**

**b. Awarding Defendants' attorneys' fees;**

**c. Awarding Defendants' interest and cost of the suit; and,**

**d. Granting Defendants such other and further relief as the Court deems just and**



**proper.**

## COUNTER-COMPLAINT

NOW COMES, GRAYSLAKE STOP & SHOP, LLC and LOUAY ALANI, by and through its attorneys, Integrate Legal, P.C., and in Complaint of Counter-Defendants LGP REALTY HOLDINGS, LP, LEHIGH GAS WHOLESALE, LLC, LEHIGH BAS WHOLESALE SERVICE, INC., and CROSS AMERICAN PARTNERS, LP (hereinafter referred to collectively as "Counter-Defendants"), and alleges as follows:

### I.      BACKGROUND

**A.  In August 2017 GRAYSLAKE STOP & SHOP Files Suit Against Counter-Defendants For Violations of the Petroleum Marketing Practices Act and Breach of Contract**

1.  On or about October 22, 2014, GRAYSLAKE STOP & SHOP entered into a lease with PT, LLC and BAPA, LLC for the property located at 735 Belvidere Road, Grayslake, Illinois 60030 (the "Property").

2.  On or about August 23, 2017, Plaintiffs filed a Complaint against Counter-Defendants alleging violations of Petroleum Marketing Practices Act.

3.   Among the allegations contained in Plaintiffs' complaint were allegations that Counter-Defendants violated GRAYSLAKE STOP & SHOP's supply agreement. *Id.*

**B. In December 2017 Counter-Defendants File Their Counterclaim & Third-Party Complaint Alleging Breach of Contract and Trespass against Plaintiffs**

4.  On or about December 8, 2017, Counter-Defendants filed their Answer with Counterclaims and Third-Party Complaint.

5.  In addition, on or about December 8, 2017, Counter-Defendants brought a third-party complaint against LOUAY ALANI and ALI ALANI alleging in Breach of Guaranty.

**C. Counter-Defendants Claim Its Interest In Plaintiffs' Grayslake Property Lease Is From a September 2016 Assignment**

6. Counter-Defendants alleged in their pleadings that they had an interest in the Grayslake Property by virtue of an assignment effective September 27, 2016. *See Counterclaim* ¶ 38.

7. Counter-Defendants purchased the Grayslake Property on September 26, 2016.

**D. Counter-Defendants Fails to Advise the Court or Plaintiffs That They Sold the Property in December 2016**

8. On or about December 20, 2016, Counter-Defendants sold the Grayslake Property conveying it via special warranty deed to National Retail Properties, LP. *See attached and incorporated hereto:* Exhibit **A**: Warranty Deed dated December 20, 2016.

9. Counter-Defendants conveyed their entire interest in the Grayslake Property approximately one-year prior to filing their Counterclaim and Third Party Complaint alleging that they still had an interest in the Grayslake Property through an assignment dated the same date they originally purchased the Grayslake Property.

10. On or about January 31, 2019, the parties entered into a settlement agreement ("Settlement Agreement") that disposed of this matter entirely. *See attached and incorporated hereto as* Exhibit **B**: Settlement Agreement.

11. Pursuant to the terms of the Settlement Agreement GRAYSLAKE STOP & SHOP continued to operate at its location pursuant to the terms of its lease.

**E. In 2019 GRAYSLAKE STOP & SHOP Attempted to Purchase the Property & Discovered That National Retail Properties Owns the Property**

12. After signing the Settlement Agreement GRAYSLAKE STOP & SHOP learned that National Retail Properties owned the Grayslake Property.

---



13. In 2019 National Retail Properties advised GRAYSLAKE STOP & SHOP that its tenant on the Property was Defendants and not GRAYSLAKE STOP & SHOP.

**F. Counter-Defendants Entered Into a Multi-Property Master Lease with the New Owner of the Property & the Grayslake Property Was Part of that Lease**

14. After signing the settlement agreement GRAYSLAKE STOP & SHOP learned that National Retail Properties had entered into a multi-property master lease with Counter-Defendants when it purchased the Grayslake Property.

15. In 2019 National Retail Properties advised Grayslake that in order to sell the Property to Grayslake it would have to obtain the agreement of Defendants to take the Property out of the multi-property master lease.

16. GRAYSLAKE STOP & SHOP recently discovered that the multi-property master lease contains a right of first refusal of Counter-Defendants to purchase the Grayslake Property.

17. In 2019 National Retail Properties advised Grayslake that in order to sell the Property to Grayslake that Counter-Defendant would have to give up its right of first refusal to purchase the property.

18. In early 2020 GRAYSLAKE STOP & SHOP was informed that National Retail Properties would not sell the Grayslake Property to it.

**COUNT I – FRAUDULENT INDUCEMENT**
**JURY TRIAL DEMANDED**

19. GRAYSLAKE STOP & SHOP and ALANI incorporates by references Paragraphs 1-18 above, as though each were more fully set forth herein.

20. Pursuant to the terms of the Settlement Agreement the GRAYSLAKE STOP & SHOP was to continue to lease the Grayslake Property pursuant to the terms and conditions of the Grayslake Lease.

21. At the time of signing the settlement agreement Counter-Defendants told GRAYSLAKE STOP & SHOP and ALANI that it was GRAYSLAKE STOP & SHOP's landlord and that it had an interest in the Property by which it could only settle the legal dispute.

22. GRAYSLAKE STOP & SHOP and ALANI told Counter-Defendants that they wanted to purchase the Property as part of the settlement.

23. Counter-Defendants failed to advise GRAYSLAKE STOP & SHOP and ALANI that they had a multi-year lease with the new owner at the time the settlement agreement was signed.

24. Counter-Defendants failed to advise GRAYSLAKE STOP & SHOP and ALANI that they had the right of first refusal to purchase the Property at the time the settlement agreement was signed.

25. Counter-Defendants told GRAYSLAKE STOP & SHOP and ALANI these untruths and failed to disclose its true interest in the Property to induce GRAYSLAKE STOP & SHOP and ALANI to sign the settlement agreement.

26. Counter-Defendants told GRAYSLAKE STOP & SHOP and ALANI these untruths and failed to disclose its true interest in the Property to induce GRAYSLAKE STOP & SHOP and ALANI to not seek to purchase the Property as part of the settlement.

27. Counter-Defendants told GRAYSLAKE STOP & SHOP and ALANI these untruths and failed to disclose its true interest in the Property to induce GRAYSLAKE STOP & SHOP and ALANI to not seek additional terms and conditions as part of the settlement which

would require Counter-Defendants to agree to certain actions relating to its interest in the Property which would assist GRAYSLAKE STOP & SHOP and/or ALANI in purchasing the Property.

28. GRAYSLAKE STOP & SHOP and ALANI reasonably relied on Counter-Defendants misstatements and nondisclosures when it signed the settlement agreement.

29. GRAYSLAKE STOP & SHOP and ALANI has been damaged by Counter-Defendants in that they settled their litigation under terms substantially different than they would have had Counter-Defendants not made the misstatements and hid the truth.

**WHEREFORE**, Counter-Plaintiff GRAYSLAKE STOP & SHOP and LOUAY ALANI demand a jury trial and requests this Honorable Court enter judgment in its favor and against Counter-Defendants LGP REALTY HOLDINGS LP, LEHIGH GAS WHOLESALE LLC, and CROSSAMERICA PARTNERS LP  as follows:

A. Rescinding the settlement agreement in its entirety as it applies to GRAYSLAKE STOP & SHOP, LLC;

B. Award GRAYSLAKE STOP & SHOP all actual damages in an amount which has not yet been fully determined;

C. Awarding GRAYSLAKE STOP & SHOP its legal expenses, costs, and reasonable attorneys' fees incurred in this action; and

D. Granting such other and further relief as the Court deems just and equitable.

**COUNT II**
**BREACH OF CONTRACT (Supply Agreement)**
**JURY TRIAL DEMANDED**

30. GRAYSLAKE STOP & SHOP and ALANI incorporates by references Paragraphs 1-18 above, as though each were more fully set forth herein.

---



31. On October 22, 2014 State Oil Company and Grayslake Stop & Shop, LLC entered into a Petroleum Products Supply Agreement. *See attached and incorporated hereto*: <u>Exhibit **C**: Supply Agreement.</u>

32. Effective September 27, 2016, State Oil's rights and obligations under the Grayslake Supply Agreement ("Supply Agreement") were assigned to LGW, LGP Realty or LGP's Realty's subsidiaries and LGW Services, each of which were affiliates of CrossAmerica Partners LP.

33. Pursuant to the Supply Agreement, Counter-Defendant agreed furnish a supply of gasoline to GRAYSLAKE STOP & SHOP.

34. Pursuant to the Supply Agreement, Counter-Defendant agreed to charge GRAYSLAKE STOP & SHOP for each transport load of gasoline at Unbranded posted price, plus $0.0200 per gallon, plus federal excise tax, Federal Oil Spill Recovery Fee, state motor fuel tax, underground storage tank tax, environmental impact fee, advertising fees from the oil company, freight, prepaid state sales tax, and any county or city imposed taxes that are required to be collected by Supplier.

35. State sales tax, county imposed motor fuel tax, and any other city or locally imposed tax on sales were the sole responsibility of Grayslake.

36. Pursuant the terms of the Supply Agreement if GRAYSLAKE STOP & SHOP sells unbranded fuel, credit card proceeds were required to come directly to Counter-Defendants.

37. GRAYSLAKE STOP & SHOP has only ever sold unbranded fuel.

38. Therefore, all credit card proceeds from fuel payments by customers of GRAYSLAKE STOP & SHOP were automatically deposited into an account controlled by Counter-



Integrate Legal, PC
Service@Integrate-Legal.com

ANSWER, AFFIRMATIVE
DEFENSES & COUNTER-CLAIMS

Page 27 of 31

Defendants (hereinafter referred to as Counter-Defendants' "Grayslake Credit Card Account").

39. Counter-Defendant used its Grayslake Credit Card Account to pay all charges it assessed for gasoline against GRAYSLAKE STOP & SHOP.

40. If there were funds left after Counter-Defendants paid itself from its Grayslake Credit Card Account, it would then transfer these funds to GRAYSLAKE STOP & SHOP.

41. Pursuant to the Supply Agreement, prior to September 27, 2016, Grayslake was able to choose the fuel delivery company ("hauler") and negotiate its own unbranded rates.

42. On and after September 27, 2016, Counter-Defendants limited GRAYSLAKE STOP & SHOP to one hauler.

43. On an and after September 27, 2016, Counter-Defendants chose the unbranded rates it would deliver to GRAYSLAKE STOP & SHOP.

44. These limitations were not a term of the of the Supply Agreement.

45. On and after September 27, 2016, Counter-Defendant charged GRAYSLAKE STOP & SHOP more than it agreed to charge pursuant to the terms of the Supply Agreement.

46. Counter-Defendants breach of the supply agreement has caused significant financial harm to GRAYSLAKE STOP & SHOP.

**WHEREFORE**, Counter-Plaintiff GRAYSLAKE STOP & SHOP, LLC, demand a jury trial and requests this Honorable Court enter judgment in its favor and against Counter-Defendants LGP REALTY HOLDINGS LP, LEHIGH GAS WHOLESALE LLC, and CROSSAMERICA PARTNERS LP  as follows:

A. Awarding GRAYSLAKE STOP & SHOP all actual damages in an amount which has not yet been fully determined;



B.  Awarding GRAYSLAKE STOP & SHOP its legal expenses, costs, and reasonable attorneys' fees incurred in this action; and

C.  Granting such other and further relief as the Court deems just and equitable.

**COUNT III**
**BREACH OF CONTRACT (LEASE AGREEMENT)**

47. GRAYSLAKE STOP & SHOP incorporates by references Paragraphs 1-30 above, as though each were more fully set forth herein.

48. On an and after September 27, 2016, Counter-Defendants overcharged fees and charged fees that were not part of the Lease Agreement to GRAYSLAKE STOP & SHOP.

49. Counter-Defendant's charged property maintenance fees, underground storage tank fees, other underground maintenance fees that pursuant to Section 12.1 of the Lease were Landlord's Responsibility.

50. Prior to September 2016 GRAYSLAKE STOP & SHOP granted State Oil withdrawal authorizations from its checking account to pay for rent ("State Oil Authorizations").

51. On or after September 2016 Counter-Defendants opened an account named "Property Management Account" and began using the State Oil authorizations to deduct the fees discussed above in violation of the lease agreement.

52. If, as alleged by Counter-Defendant's they have privity of contract with GRAYSLAKE STOP & SHOP, the allegations against Counter-Defendants as plead in paragraph 48-51 above continued on and after December 20, 2016.

53. Counter-Defendants have deducted more than $44,000 from GRAYSLAKE STOP & SHOP's checking account in violation of the lease.

**WHEREFORE**, Counter-Plaintiff GRAYSLAKE STOP & SHOP, requests this Honorable Court enter judgment in its favor and against Counter-Defendants LGP REALTY HOLDINGS LP, LEHIGH GAS WHOLESALE LLC, and CROSSAMERICA PARTNERS LP as follows:

A.  Awarding GRAYSLAKE STOP & SHOP all actual damages in an amount which has not yet been fully determined;

B.  Awarding GRAYSLAKE STOP & SHOP its legal expenses, costs, and reasonable attorneys' fees incurred in this action; and

C.  Granting such other and further relief as the Court deems just and equitable.

### COUNT IV
### UNJUST ENRICHMENT
### JURY TRIAL DEMANDED

54. GRAYSLAKE STOP & SHOP incorporates by references Paragraphs 1-30 above, as though each were more fully set forth herein.

55. On an and after September 27, 2016, Counter-Defendants overcharged fees and charged fees that were not part of the Lease Agreement to GRAYSLAKE STOP & SHOP.

56. Counter-Defendant's charged property maintenance fees, underground storage tank fees, other underground maintenance fees that pursuant to Section 12.1 of the Lease were Landlord's Responsibility.

57. Prior to September 2016 GRAYSLAKE STOP & SHOP granted State Oil withdrawal authorizations from its checking account to pay for rent ("State Oil Authorizations").

58. On or after September 2016 Counter-Defendants opened an account named "Property Management Account" and began using the State Oil authorizations to deduct the fees discussed above.



59. If, as alleged by Counter-Defendant's they have privity of contract with GRAYSLAKE STOP & SHOP, the allegations against Counter-Defendants as plead in paragraphs 55-58 above continued on and after December 20, 2016.

60. Counter-Defendants have deducted more than $44,000 from GRAYSLAKE STOP & SHOP's checking account.

**WHEREFORE**, Counter-Plaintiff GRAYSLAKE STOP & SHOP, demands a jury trial and requests this Honorable Court enter judgment in its favor and against Counter-Defendants LGP REALTY HOLDINGS LP, LEHIGH GAS WHOLESALE LLC, and CROSSAMERICA PARTNERS LP as follows:

A. Awarding GRAYSLAKE STOP & SHOP all actual damages in an amount which has not yet been fully determined;

B. Granting such other and further relief as the Court deems just and equitable.

Respectfully Submitted,

*/s// Cynthia M Rote*
Cynthia M Rote

Cynthia M Rote
ARDC No. 6287240
Integrate Legal, PC
516 Main Street, Suite 1
Pecatonica, IL 61063
(815) 255-4695
Cynthia@Integrate-Legal.com