# PETROLEUM PRODUCTS SUPPLY AGREEMENT

This Agreement is made and entered into this 22nd day of October, 2014, by and between **STATE OIL COMPANY** with an address of 31366 North Highway 45, Libertyville, Illinois 60048 ("Supplier") and **GRAYSLAKE STOP & SHOP, LLC,** with an address of 735 Belvidere Rd., Grayslake, IL 60030 ("Retailer").

For Recorder's Use Only

## RECITALS

**WHEREAS, GRAYSLAKE STOP & SHOP, LLC** ("Tenant") has entered into an Lease ("Lease") for the Premises commonly known as 735 Belvidere Rd., Grayslake, IL 60030 ("Premises") with **BAPA, LLC AND PT, LLC** ("Landlord") to rent and use the Premises for the retail sales of gasoline and allied petroleum products;

**WHEREAS,** the Retailer desires to purchase all its needs of gasoline and allied petroleum products to be sold on the Premises from Supplier and Supplier desires to furnish the Retailer with all of its needs of gasoline and allied petroleum products for the Premises;

**NOW, THEREFORE,** in consideration of the covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. <u>Supply of Petroleum Products.</u>    The Supplier shall furnish to Retailer a supply of gasoline reasonable for its sales need, to the degree possible and the Retailer shall purchase its gasoline supply exclusively from the Supplier. The Supplier shall make reasonable efforts to provide an adequate supply. If the Supplier is unable to supply the Retailer's reasonable needs of gasoline, and if the Retailer shall be able to acquire a supply of gasoline from any other source, Retailer agrees to enable the Supplier to purchase that gasoline for resale to Retailer at the cost and terms available to Retailer. The Supplier shall charge the Retailer for each transport load of gasoline at Unbranded posted price, plus $.0200 per gallon, plus federal excise tax, Federal Oil Spill Recovery Fee, state motor fuel tax, underground storage tank tax, environmental impact fee, advertising fees from the oil company, freight, prepaid state sales tax, and any county or city imposed taxes that are required to be collected by

Page **1** of **12**

Initial ___ ___ ___



Supplier. State sales tax, county imposed motor fuel tax, and any other city or locally imposed tax on sales shall be the sole responsibility of the Retailer. Retailer shall furnish Seller with satisfactory tax exemption certificates where an exemption is claimed. To secure the present and future obligations of Retailer to Supplier, Retailer shall provide Supplier with a Security Agreement on the inventory and equipment of Retailer.

(A) **Delivery.** Deliveries of said gasolines shall be made by Supplier on Retailer's order in single deliveries of not less than 8,500 gallons. However, if Retailer orders a single delivery of less than 8,500 gallons, Retailer remains responsible for all costs of delivery, including freight rate, for a delivery of 8,500 gallons. Supplier shall make deliveries within 48 hours following receipt of Retailer's order but need not make such deliveries outside of normal business hours or on Sunday or holidays. Retailer agrees to purchase a minimum of 50,000 gallons per month from Supplier and the failure to do so shall constitute a default of the terms and conditions of this Supply Agreement.

(B) **Liabilities.** The obligation of the parties to deliver and receive gasoline hereunder shall be suspended and excused (a) if Supplier is prevented from or delayed in producing, manufacturing, transporting or delivering in its normal manner any gasoline hereunder or the materials from which such gasoline is manufactured because of acts of God, earthquake, fire, flood or the elements, malicious mischief, riots, strikes, lockouts, boycotts, picketing, labor disputes or disturbance, compliance with any directive, order or regulation of any governmental authority or representative thereof acting under claim or color of authority; or (b) loss or shortage of any gasoline due to reasons beyond Supplier's reasonable control or (c) loss or shortage of any part of Supplier's own or customary transportation or delivery facilities due to reasons beyond Supplier's reasonable control; or (d) for any reason beyond Supplier's or Retailer's reasonable control. Whenever such causes, in Supplier's judgment, require restriction of deliveries, Supplier reserves the right, in its discretion, to restrict deliveries to Retailer, whether or not delivering to others.

(C) **Payments.** All sums paid to Supplier shall be paid in lawful money of the United States of America without discount at time of delivery or upon such other terms as Supplier may from time to time require. All sums paid shall be applied first to the payments of any outstanding obligation for product purchases, credit card chargebacks, and/or repairs including all bills due to Supplier. Supplier may assess a reasonable administrative fee upon retailer for payments that are returned or rejected for lack of sufficient funds or for any other reason within Retailer's control. All overdue sums owed to Supplier will bear interest at the rate of 18% per annum or the highest rate permitted by law, whichever is lower, from the date due until paid. Supplier expressly reserves the right to initiate an Electronic Funds Transfer (EFT) payment system to satisfy all payment obligations under this Paragraph 1 (Supply of Petroleum Products) and Paragraph 2 (Credit Cards).

(D) **Resale Provisions.** Retailer agrees not to mix, substitute or adulterate said gasolines with any other gasolines or materials. The primary business activity of Supplier is the sale and distribution of petroleum products and it is the understanding of the Supplier and Retailer that the Retailer will continue during the term of this Agreement to purchase all

Page 2 of 12

Initial _____

petroleum products at this location from the Supplier. In the event the Retailer mixes, substitutes, or adulterates said petroleum products, at Supplier's option, this Agreement may be terminated upon five (5) days written notice to Retailer. The Retailer understands this paragraph in its entirety and upon signing of the Agreement is in complete agreement with all of the above.

(E) **Notice.** All notices and demands required or permitted to be given hereunder shall be deemed to be properly given if given in writing, delivered personally, by registered or certified United States Mail, with postage prepaid and return receipt request, or by reputable national overnight courier and addressed to the party to be notified at the address set forth above or to such other address as any party hereto may from time to time designate by notice in writing to the other party hereto). Any notices hereunder required or permitted to be given to Supplier shall be deemed properly given and served when deposited, postage prepaid, Registered or Certified, in the United States mail, personally delivered, or sent by reputable national overnight courier and addressed to Supplier at 31366 North Highway 45, Libertyville, Illinois 60048.

(F) **Modification.** This agreement may be modified or superseded by any and all governmental laws and regulations enacted subsequent hereto pertaining to Energy Allocation and Conservation, however hardships and forfeitures shall not be enforced between the parties as a result.

(G) **Retailer's Assignment.** This Supply Agreement shall not be assigned by Retailer or by operation of law without Supplier's prior written consent, but otherwise shall be binding upon and shall inure to the benefit of the parties, their heirs, their representatives, successors and assigns, and it is the intention of the parties that the Agreement shall further be deemed to be a covenant running with the land, which shall not be extinguished by a transfer of the Property or by the transfer of the business that is operating on the Property. The parties further agree that a copy or counterpart of this Supply Agreement shall be recorded in the office of the Recorder of Deeds of the County where the property is located.

(H) **Term of Agreement.** Retailer and Supplier expressly agree that the Initial Term of the Supply Agreement shall be for a period which commences on the date in which Retailer takes possession of the Premises, pursuant to the Lease, and terminates in conjunction with the initial term of the lease on October 31, 2017. If Tenant exercises the Lease Option to Extend, the Supply Agreement will terminate on October 17, 2020.

(I) **Right to Assign.** Supplier shall have the right at any time to assign the Supply Agreement to a new Supplier at its sole discretion.

(J) **Shortfalls.** Retailer agrees to reimburse Supplier for the cost of any shortfall that Supplier incurs with respect to any oil company minimum gallonage requirements with respect to the subject property or any shortfalls from rebates due to early delivery.

2. <u>Credit Cards.</u> The Retailer shall have the option of accepting credit cards for retail gasoline sales. If a nationally branded gasoline product is being advertised and sold from the premises, and if the major oil company whose brand is being used requires that its credit cards be accepted, then

Initial _____

the Retailer shall accept such credit cards and shall comply with all credit card regulations of the oil company. All fees, discounts or charges including charge-backs associated with the use of the credit card will be at the sole expense of the Retailer. Retailer shall have the right to utilize their own credit card processor as long as it continues to accept the credit cards of the oil company whose brand is being used. **If Retailer sells unbranded fuel, credit card proceeds must come directly to Supplier.**

3. <u>Meter Readings and Inventory Control.</u> Supplier reserves the right, at their option, to have a representative audit the meter readings at the beginning of any given month to verify purchases against sales. Inventory control is required on all underground storage tanks. Retailer agrees to take stick readings and pump readings on every day of each month and mail the inventory control forms and tank data sheets to State Oil Company, 31366 North Highway 45, Libertyville, Illinois 60048, on or before the 5th day of the following month.

4. <u>Sales Tax Affidavit.</u> Retailer agrees to sign the Sales Tax Affidavit attached hereto and made a part hereof.

5. <u>Use of Premises.</u> The Retailer shall continuously and uninterruptedly during the term of this Agreement conduct its customary business activity therein during all normal business days and during the Retailer's customary hours, unless prevented from doing so by strike, fire, casualty or other causes beyond the Retailer's control and except during reasonable periods for repairing, cleaning and decorating the Premises.

6. <u>Identification of Business.</u> The Supplier shall be responsible for supplying and Retailer shall maintain all signs and advertising relating to the gasoline brand being dispensed from the Premises. In the event, the Retailer desires to use another name to identify the convenience grocery store operation upon the Premises, the name will be mutually agreed upon by both the Supplier and Retailer. The Supplier reserves the right to change the brands of gasoline at anytime.

7. <u>Indemnity.</u> Retailer agrees that it will save, hold harmless and indemnify Supplier and the Oil Company, whose logo or signage is being used in connection with the sale of petroleum products, from and against all liability or loss, including any cost of litigation or attorneys fees, which either the Supplier or the Refiner may sustain as a result of claims, demands, costs or judgments arising from the operation of the Business on the Premises, or from any action or inaction taken by any person at the Business or Premises, or from any condition or claim of condition of the Premises during the term of the Agreement.

8. <u>Term and Termination of Agreement.</u> The Initial Term of this Agreement shall be for a period which commences on the date in which Retailer takes possession of the Premises pursuant to the Lease and terminates in conjunction with the Lease. The parties specifically acknowledge and agree that the franchise relationship (as defined in the Petroleum Marketing Practices Act, 15 USC §2801 <u>et seq.</u>) created by this Agreement between the Retailer and the Supplier is necessarily contingent upon the Retailer's ability to maintain possession of the Premises. In the event that the Retailer's possession of the Premises is terminated, for any reason the parties agree that the purpose for which this Agreement is being entered into (the supply and purchase of gasoline and allied petroleum products to be sold on the Premises) will be frustrated. The parties further agree that the failure of the Retailer to maintain possession will constitute a default and an event, which is relevant to the franchise relationship as a result of which termination of the franchise by Supplier is reasonable within the meaning of Section

Page 4 of 12

Initial

2802 (b)(2)(C) of the Petroleum Marketing Practices Act. Notwithstanding anything to the contrary contained in this Section 8, the mere fact that Retailer has vacated the premises or otherwise has violated the terms of this Agreement does not limit the remedies of Supplier under the Petroleum Marketing Practices Act or pursuant to state law or under this Agreement. Failure on the part of Retailer, its successors and assigns to comply fully with the branding requirements of the Oil Company shall be grounds for termination of this Agreement.

9. <u>Default.</u>

(A) **Relationship to Lease.** As stated on Page 1, Landlord, which has the same principal parties as Supplier, entered into a Lease with Tenant, which has the same principal party as Retailer. The Supply Agreement is material to the Lease. A default under the Supply Agreement constitutes a default under the Lease. In turn, a default under the Lease constitutes a default under the Supply Agreement.

(B) **Other Agreements.** Supplier and Retailer may have agreements related to other locations that are owned or otherwise controlled by Retailer. Any default under any such other agreement shall be considered a default under this Supply Agreement.

10. <u>Supplier's Remedies.</u> In the event of a breach by Retailer of any of its material covenants or obligations contained herein, not cured within five (5) days after notice, or default by Tenant under the terms of the Lease, the parties agree that the Supplier, in addition to any other remedy available to it at law or equity, shall be entitled to terminate the Agreement and receive damages in a sum to be calculated by taking the average monthly gallons purchased over the most recent 24 months and multiplying it $0.0300 and then multiplying by the number of months remaining on the then current term (Initial Term or Renewal Term) of the Supply Agreement. Supplier will be entitled to recover from Retailer reasonable attorneys' fees and other legal costs Supplier incurs in order to secure or protect the rights inuring to Supplier under this Agreement, or to enforce the terms of this Agreement.

11. <u>Time of Performance.</u> The time of performance of all of the covenants and conditions of this Agreement is of the essence.

12. <u>Not a Joint Venture.</u> Nothing herein shall be construed so as to constitute a joint venture or partnership between Supplier and Retailer.

13. <u>Law of Illinois to Govern.</u> The laws of the State of Illinois shall govern the validity, performance and enforcement of this Agreement.

14. <u>Captions for Convenience Only.</u> The captions of the several articles and sections contained herein are for convenience only and do not define, limit, describe or construe the contents of such articles or sections.

15. <u>Amendments to be in Writing.</u> No amendment, modification or supplement to this Agreement shall be effective unless in writing, executed and delivered by Supplier and Retailer.

16. <u>Severability.</u> If any provision of this Agreement is held to be invalid, such invalid provision shall be deemed to be severable from and shall not affect the validity of the remainder of this Agreement.

Initial _____

17. <u>Successors and Assigns.</u> The terms and provisions of this Agreement shall be binding upon, and shall inure to the benefit of the parties hereto and their successors and permitted assigns.

18. <u>Joint Obligation.</u> The obligations hereunder imposed shall be joint and several.

19. <u>Inability to Perform.</u> This Agreement and the obligations of the Retailer hereunder shall not be affected or impaired because the Supplier is unable to fulfill any of its obligations hereunder or is delayed in doing so, if such inability or delay is caused by reason of strike, labor troubles, acts of God, or any other cause beyond the reasonable control of the Supplier.

20. <u>Cumulative Remedies.</u> No remedy or election hereunder shall be deemed exclusive but shall, wherever possible, be cumulative and all other remedies at law or in equity.

21. <u>Receipt of Notice.</u> Retailer acknowledges receipt of a copy of SUMMARY OF THE PETROLEUM MARKETING PRACTICES ACT, #3128-01-Federal Register-Vol. 43, No. 169, attached hereto as **Exhibit "A"**, which is made part of Retailer's Agreement with **STATE OIL COMPANY.**

*(Remainder of page intentionally left blank.)*

Initial _____

**IN WITNESS WHEREOF,** the parties hereunto have caused this Petroleum Products Supply Agreement to be executed, in Libertyville, Illinois, this 22 day of October, 2014.

**RETAILER: GRAYSLAKE STOP & SHOP, LLC**

_____
Louay Alani, Manager

**GUARANTORS:**

_____                _____
Louay Alani, as an individual                 Ali Alani, as an individual
SSN:                                          SSN:

**TENANT: GRAYSLAKE STOP & SHOP, LLC**

_____
By: Louay Alani
Its: Manager

**SUPPLIER: STATE OIL COMPANY**

_____
Peter Anest, President

**STATE OF ILLINOIS**     )
                          )   ss.
**County of Lake**        )

I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that **Louay Alani** is the Manager of **GRAYSLAKE STOP & SHOP, LLC** who is personally known to me to be the same person whose name is subscribed to the foregoing instrument as President and appeared before me this day in person and acknowledged that he signed, sealed and delivered the said instrument as his free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and notarial seal this 22 day of October 2014.

_____
Notary Public

"OFFICIAL SEAL"
KENNETH J. CHALIFOUX
Notary Public, State of Illinois
My Commission Expires 12/06/14

Page 7 of 12      Initial ___ ___ ___ ___

STATE OF ILLINOIS      )
                       ) ss.
County of Lake         )

    I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that **Louay Alani** is personally known to me to be the same person whose name is subscribed to the foregoing instrument as **Guarantor** and appeared before me this day in person and acknowledged that he signed, sealed and delivered the said instrument as his free and voluntary act, for the uses and purposes therein set forth.

    Given under my hand and notarial seal this 22 day of October 2014.

_____
Notary Public

"OFFICIAL SEAL"
KENNETH J. CHALIFOUX
Notary Public, State of Illinois
My Commission Expires 12/06/14

STATE OF ILLINOIS      )
                       ) ss.
County of Lake         )

    I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that **Ali Alani** is personally known to me to be the same person whose name is subscribed to the foregoing instrument as **Guarantor** and appeared before me this day in person and acknowledged that he signed, sealed and delivered the said instrument as his free and voluntary act, for the uses and purposes therein set forth.

    Given under my hand and notarial seal this 22 day of October 2014.

_____
Notary Public

"OFFICIAL SEAL"
KENNETH J. CHALIFOUX
Notary Public, State of Illinois
My Commission Expires 12/06/14

STATE OF ILLINOIS      )
                       ) ss.
County of Lake         )

    I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that **Peter Anest** is the President of **STATE OIL COMPANY**, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument and appeared before me this day in person and acknowledged that he signed, sealed and delivered the said instrument as his free and voluntary act, for the uses and purposes therein set forth.

    Given under my hand and notarial seal this 22 day of October 2014.

_____
Notary Public

"OFFICIAL SEAL"
KENNETH J. CHALIFOUX
Notary Public, State of Illinois
My Commission Expires 12/06/14

Page **8** of **12**

# EXHIBIT A

# Revised Summary of Title I of the Petroleum Marketing Practices Act

AGENCY: Department of Energy

ACTION: Notice

**SUMMARY:** This notice contains a summary of Title I of the Petroleum Marketing Practices Act, as amended (the Act). The Petroleum Marketing Practices Act was originally enacted on June 19, 1978, and was amended by the Petroleum Marketing Practices Act Amendments of 1994, enacted on October 19, 1994. On August 30, 1978, the Department of Energy published in the **Federal Register** a summary of the provisions of Title I of the 1978 law, as required by the Act. The Department is publishing this revised summary to reflect key changes made by the 1994 amendments.

The Act is intended to protect franchised distributors and retailers of gasoline and diesel motor fuel against arbitrary or discriminatory termination or nonrenewal of franchises. This summary describes the reasons for which a franchise may be terminated or not renewed under the law, the responsibilities of franchisors, and the remedies and relief available to franchisees. The Act requires franchisors to give franchisees copies of the summary contained in this notice whenever notification of termination or non renewal of a franchise is given.

**SUPPLEMENTARY INFORMATION:**
Title I of the Petroleum Marketing Practices Act, as amended, 15 U.S.C. §§2801-2806, provides for the protection of franchised distributors and retailers of motor fuel by establishing minimum Federal standards governing the termination of franchises and the nonrenewal of franchise relationships by the franchisor or distributor of such fuel.

Section 104(d)(1) of the Act required the Secretary of Energy to publish in the **Federal Register** a simple and concise summary of the provisions of Title I, including a statement of the respective responsibilities of, and the remedies and relief available to, franchisors and franchisees under the title. The Department published this summary in the **Federal Register** on August 30, 1978. 43 F.R. 38743 (1978).

In 1994 the Congress enacted the Petroleum Marketing Practices Act Amendments to affirm and clarify certain key provisions of the 1978 statute. Among the key issues addressed in the 1994 amendments are: (1) termination or nonrenewal of franchised dealers by their franchisors for purposes of conversion to "company" operation; (2) application of state law; (3) the rights and obligations of franchisors and franchisees in third-party lease situations; and (4) waiver of rights limitations. See H.R. REP. NO. 737, 103rd Cong., 2nd Sess. 2 (1994), reprinted in 1994 U.S.C.C.A.N. 2780. Congress intended to: (1) make explicit that upon renewal a franchisor may not insist on changes to a franchise agreement where the purpose of such changes is to prevent renewal in order to convert a franchisee-operated service station into a company-operated service station; (2) make clear that where the franchisor has an option to continue the lease or to purchase the premises but does not wish to do so, the franchisor must offer to assign the option to the franchisee; (3) make clear that no franchisor may require, as a condition of entering or renewing a franchise agreement, that a franchisee waive any rights under the Petroleum Marketing Practices Act, any other Federal law, or any state law; and (4) reconfirm the limited scope of Federal preemption under the Act. Id.

The summary which follows reflects key changes to the statute resulting from the 1994 amendments. The Act requires franchisors to give copies of this summary statement to their franchisees when entering into an agreement to terminate the franchise or not to renew the franchise relationship, and when giving notification of termination or nonrenewal. This summary does not purport to interpret the Act, as amended, or to create new legal rights.

In addition to the summary of the provisions of Title I, a more detailed description of the definitions contained in the Act and of the legal remedies available to franchisees is also included in this notice, following the summary statement.

**Summary of Legal Rights of Motor Fuel Franchisees**

This is a summary of the franchise protection provisions of the Federal Petroleum Marketing Practices Act, as amended in 1994 (the Act), 15 U.S.C §§2801-2806. This summary must be given to you, as a person holding a franchise for the sale, consignment or distribution of gasoline or diesel motor fuel, in connection with any termination, or nonrenewal of your franchise by your franchising company (referred to in this summary as your supplier).

You should read this summary carefully, and refer to the Act if necessary, to determine whether a proposed termination or nonrenewal of your franchise is lawful, and what legal remedies are available to you if you think the proposed termination or failure to renew is not lawful. In addition, if you think your supplier has failed to comply with the Act, you may wish to consult an attorney in order to enforce your legal rights.

The franchise protection provisions of the Act apply to a variety of franchise agreements. The term "franchise" is broadly defined as a license to use a motor fuel trademark, which is owned or controlled by a refiner and it includes secondary agreements such as leases of real property and motor fuel supply agreements which have existed continuously since May 15, 1973, regardless of a subsequent withdrawal of a trademark. Thus, if you have lost the use of a trademark previously granted by your supplier but have continued to receive motor fuel supplies through a continuation of a supply agreement with your supplier, you are protected under the Act.

Any issue arising under your franchise which is not governed by this Act will be governed by the law of the State in which the principal place of business of your franchise is located.

Although a State may specify the terms and conditions under which your franchise may be transferred upon the death of the franchisee, it may not require a payment to you (the franchisee) for the goodwill of a franchise upon termination or nonrenewal.

The Act is intended to protect you, whether you are a distributor or a retailer, from arbitrary or discriminatory termination or nonrenewal of your franchise agreement. To accomplish this, the Act first lists the reasons for which termination or nonrenewal is permitted. Any notice of termination or nonrenewal must state the precise reason, as listed in the Act, for which the particular termination or nonrenewal is being made. These reasons are described below under the headings "Reasons for Termination" and "Reasons for Nonrenewal."

The Act also requires your supplier to give you a written notice of termination or intention not to renew the franchise within certain time periods. These requirements are summarized below under the heading "Notice Requirements for Termination or Nonrenewal."

The Act also provides certain special requirements with regard to trial and interim franchise agreements, which are described below under the heading "Trial and Interim Franchises."

The Act gives you certain legal rights if your supplier terminates or does not renew your franchise in a way that is not permitted by the Act. These legal rights are described below under the heading "Your Legal Rights."

The Act contains provisions pertaining to waiver of franchisee rights and applicable State law. These provisions are described under the heading "Waiver of Rights and Applicable State Law."

This summary is intended as a simple and concise description of the general nature of your rights under the Act. For a more detailed description of these rights, you should read the text of the Petroleum Marketing Practices Act, as amended in 1994 (15 U.S.C. §§2801-2806). This summary does not purport to interpret the Act, as amended, or to create new legal rights.

Page **9** of **12**

Initial _____

## I. Reasons for Termination

If your franchise was entered into on or after June 19, 1978, the Act bars termination of your franchise for any reasons other than those reasons discussed below. If your franchise was entered into before June 19, 1978, there is no statutory restriction on the reasons for which it may be terminated. If a franchise entered into before June 19, 1978, is terminated, however, the Act requires the supplier to reinstate the franchise relationship unless one of the reasons listed under this heading or one the additional reasons for nonrenewal described below under the heading "Reasons for Nonrenewal" exists.

### A. Non-Compliance with Franchise Agreement

Your supplier may terminate your franchise if you do not comply with a reasonable and important requirement of the franchise relationship. However, termination may not be based on a failure to comply with a provision of the franchise that is illegal or unenforceable under applicable Federal, State, or local law. In order to terminate for non-compliance with the franchise agreement, your supplier must have learned of this non-compliance recently. The Act limits the time period within which your supplier must have learned of your non-compliance to various periods, the longest of which is 120 days, before you receive notification of the termination.

### B. Lack of Good Faith Efforts

Your supplier may terminate your franchise if you have not made good faith efforts to carry out the requirements of the franchise, provided you are first notified in writing that you are not meeting a requirement of the franchise and you are given an opportunity to make a good faith effort to carry out the requirement. This reason can be used by your supplier only if you fail to make good faith efforts to carry out the requirements of the franchise within the period which began not more than 180 days before you receive the notice of termination.

### C. Mutual Agreement to Terminate the Franchise

A franchise can be terminated by an agreement in writing between you and your supplier if the agreement is entered into not more than 180 days before the effective date of the termination and you receive a copy of that agreement, together with this summary statement of your rights under the Act. You may cancel the agreement to terminate within 7 days after you receive a copy of the agreement, by mailing (by certified mail) a written statement to this effect to your supplier.

### D. Withdrawal From the Market Area

Under certain conditions, the Act permits your supplier to terminate your franchise if your supplier is withdrawing from marketing activities in the entire geographic area in which you operate. You should read the Act for a more detailed description of the conditions under which market withdrawal terminations are permitted. See 15 U.S.C. § 2802(b)(E).

### E. Other Events Permitting a Termination

If your supplier learns within the time period specified in the Act (which in no case is more than 120 days prior to the termination notice) that one of the following events has occurred, your supplier may terminate you franchise agreement:

(1) Fraud or criminal misconduct by you that relates to the operation of your marketing premises.

(2) You declare bankruptcy or a court determines that you are insolvent.

(3) You have a severe physical or mental disability lasting at least 3 months which makes you unable to provide for the continued proper operation of the marketing premises.

(4) Expiration of your supplier's underlying lease to the leased marketing premises, if: (a) your supplier gave you written notice before the beginning of the term of the franchise of the duration of the underlying lease and that the underlying lease might expire and not be renewed during the term of the franchise; (b) your franchisor offered to assign to you, during the 90-day period after notification of termination or nonrenewal was given, any option which the franchisor held to extend the underlying lease or to purchase the marketing premises (such an assignment may be conditioned on the franchisor receiving from both the landowner and the franchisee an unconditional release from liability for specified events occurring after the assignment); and (c) in a situation in which the franchisee acquires possession of the leased marketing premises effective immediately after the loss of the right of the franchisor to grant possession, the franchisor, upon written request of the franchisee, made a bona fide offer to sell or assign to the franchisee the franchiser's interest in any improvements or equipment located on the premises, or offered by the franchisee a right of first refusal of any offer from another person to purchase the franchisor's interest in the improvements and equipment.

(5) Condemnation or other taking by the government, in whole or in part, of the marketing premises pursuant to the power of eminent domain. If the termination is based on a condemnation or other taking, your supplier must give you a fair share of any compensation which he receives for any loss of business opportunity or good will.

(6) Loss of your supplier's right to grant the use of the trademark that is the subject of the franchise, unless the loss was because of bad faith actions by your supplier relating to trademark abuse, violation of Federal or State law, or other fault or negligence.

(7) Destruction (other than by your supplier) of all or a substantial part of your marketing premises. If the termination is based on the destruction of the marketing premises and if the premises are rebuilt or replaced by your supplier and operated under a franchise, your supplier must give you a right of first refusal to this new franchise.

(8) Your failure to make payments to your supplier of any sums to which your supplier is legally entitled.

(9) Your failure to operate the marketing premises for 7 consecutive days, or any shorter period of time which, taking into account facts and circumstances, amounts to an unreasonable period of time not to operate.

(10) Your intentional adulteration, mislabeling or misbranding of motor fuels or other trademark violations.

(11) Your failure to comply with Federal, State, or local laws or regulations of which you have knowledge and that relate to the operation of the marketing premises.

(12) Your conviction of any felony involving moral turpitude.

(13) Any event that affects the franchise relationship and as a result of which termination is reasonable.

## II. Reasons for Nonrenewal

If your supplier gives notice that he does not intend to renew any franchise agreement, the Act requires that the reason for nonrenewal must be either one of the reasons for termination listed immediately above, or one of the reasons for nonrenewal listed below.

### A. Failure to Agree on Changes or Additions To Franchise

If you and your supplier fail to agree to changes in the franchise that your supplier in good faith has determined are required, and your supplier's insistence on the changes is not for the purpose of converting the leased premises to a company operation or otherwise preventing the renewal of the franchise relationship, your supplier may decline to renew the franchise.

### B. Customer Complaints

If you supplier has received numerous customer complaints relating to the condition of your marketing premises or to the conduct of any of your employees, and you have failed to take prompt corrective action after having been notified of these complaints, your supplier may decline to renew the franchise.

Initial _____

### C. Unsafe or Unhealthful Operations

If you have failed repeatedly to operate your marketing premises in a clean, safe and healthful manner after repeated notices from your supplier, your supplier may decline to renew the franchise.

### D. Operation of Franchise is Uneconomical

Under certain conditions specified in the Act, your supplier may decline to renew your franchise if he has determined that renewal of the franchise is likely to be uneconomical. Your supplier may also decline to renew your franchise if he has decided to convert your marketing premises to a use other than for the sale of motor fuel, to sell the premises, or to materially alter, add to, or replace the premises.

## III. Notice Requirements for Termination or Nonrenewal

The following is a description of the requirements for the notice which your supplier must give you before he may terminate your franchise or decline to renew your franchise relationship. These notice requirements apply to all franchise terminations, including franchises entered into before June 19, 1978 and trial and interim franchises, as well as to all nonrenewals of franchise relationships.

### A. How Much Notice Is Required

In most cases, your supplier must give you notice of termination or nonrenewal at least 90 days before the termination or nonrenewal takes effect.

In circumstances where it would not be reasonable for your supplier to give you 90 days notice, he must give you notice as soon as he can do so. In addition, if the franchise involves leased marketing premises, your supplier may not establish a new franchise relationship involving the same premises until 30 days after notice was given to you or the date the termination or nonrenewal takes effect, whichever is later. If the franchise agreement permits, your supplier my repossess the premises and, in reasonable circumstances, operate them through his employees or agents.

If the termination or nonrenewal is based upon a determination to withdraw from the marketing of motor fuel in the area, your supplier must give you notice at least 180 days before the termination or nonrenewal takes effect.

### B. Manner and Contents of Notice

To be valid, the notice must be in writing and must be sent by certified mail or personally delivered to you. It must contain: (1) A statement of your supplier's intention to terminate the franchise or not to renew the franchise relationship, together with his reasons for this action; (2) The date the termination or nonrenewal takes effect; and (3) A copy of this summary.

## IV. Trial Franchises and Interim Franchises

The following is a description of the special requirements that apply to trial and interim franchises.

### A. Trial Franchises

A trial franchise is a franchise, entered into on or after June 19, 1978, in which the franchisee has not previously been a party to a franchise with the franchisor and which has an initial term of 1 year or less. A trial franchise must be in writing and must make certain disclosures, including that it is a trial franchise, and that the franchisor has the right not to renew the franchise relationship at the end of the initial term by giving the franchisee proper notice.

The unexpired portion of a transferred franchise (other than as a trial franchise, as described above) does not qualify as a trial franchise.

In exercising his right not to renew a trial franchise at the end of its initial term, your supplier must comply with the notice requirements described above under the heading "Notice Requirements for Termination or Nonrenewal."

### B. Interim Franchises

An interim franchise is a franchise, entered into on or after June 19, 1978, the duration of which, when combined with the terms of all prior interim franchises between the franchisor and the franchisee, does not exceed three years, and which begins immediately after the expiration of a prior franchise involving the same marketing premises which was not renewed, based on a lawful determination by the franchisor to withdraw from marketing activities in the geographic area in which the franchisee operates.

An interim franchise must be in writing and must make certain disclosures, including that it is an interim franchise and that the franchisor has the right not to renew the franchise at the end of the term based upon a lawful determination to withdraw from marketing activities in the geographic area in which the franchisee operates.

In exercising his right not to renew a franchise relationship under an interim franchise at the end of its term, your supplier must comply with the notice requirements described above under the heading "Notice Requirements for Termination or Nonrenewal."

## V. Your Legal Rights

Under the enforcement provisions of the Act, you have the right to sue your supplier if he fails to comply with the requirements of the Act. The courts are authorized to grant whatever equitable relief is necessary to remedy the effects of your supplier's failure to comply with the requirements of the Act, including declaratory judgment, mandatory or prohibitive injunctive relief, and interim equitable relief. Actual damages, exemplary (punitive) damages under certain circumstances, and reasonable attorney and expert witness fees are also authorized. For a more detailed description of these legal remedies you should read the text of the Act. 15 U.S.C. §§2801-2806.

## VI. Waiver of Rights and Applicable State Law

Your supplier may not require, as a condition of entering into or renewing the franchise relationship, that you relinquish or waive any right that you have under this or any other Federal law or applicable State law. In addition, no provision in a franchise agreement would be valid or enforceable if the provision specifies that the franchise would be governed by the law of any State other than the one in which the principal place of business for the franchise is located.

### Further Discussion of Title I - Definitions and Legal Remedies

#### I. Definitions

Section 101 of the Petroleum Marketing Practices Act sets forth definitions of the key terms used throughout the franchise protection provisions of the Act. The definitions from the Act which are listed below are of those terms which are most essential for purposes of the summary statement. (You should consult section 101 of the Act for additional definitions not included here.)

##### A. Franchise

A "franchise" is any contract between a refiner and a distributor, between a refiner and a retailer, between a distributor and another distributor, or between a distributor and a retailer, under which a refiner or distributor (as the case may be) authorizes or permits a retailer or distributor to use, in connection with the sale, consignment, or distribution of motor fuel, a trademark which is owned or controlled by such refiner or by a refiner which supplies motor fuel to the distributor which authorizes or permits such use.

Initial ˇ R AA

The term "franchise" includes any contract under which a retailer or distributor (as the case may be) is authorized or permitted to occupy leased marketing premises, which premises are to be employed in connection with the sale, consignment, or distribution of motor fuel under a trademark which is owned or controlled by such refiner or by a refiner which supplies motor fuel to the distributor which authorizes or permits such occupancy. The term also includes any contract pertaining to the supply of motor fuel which is to be sold, consigned or distributed under a trademark owned or controlled by a refiner, or under a contract which has existed continuously since May 15, 1973, and pursuant to which, on May 15, 1973, motor fuel was sold, consigned or distributed under a trademark owned or controlled on such date by a refiner. The unexpired portion of a transferred franchise is also included in the definition of the term.

### B. Franchise Relationship

The term "franchise relationship" refers to the respective motor fuel marketing or distribution obligations and responsibilities of a franchisor and a franchisee which result from the marketing of motor fuel under a franchise.

### C. Franchisee

A "franchisee" is a retailer or distributor who is authorized or permitted, under a franchise, to use a trademark in connection with the sale, consignment, or distribution of motor fuel.

### D. Franchisor

A "franchisor" is a refiner or distributor who authorizes or permits, under a franchise, a retailer or distributor to use a trademark in connection with the sale, consignment, or distribution of motor fuel.

### E. Marketing Premises

"Marketing premises" are the premises which, under a franchise, are to be employed by the franchisee in connection with the sale, consignment, or distribution of motor fuel.

### F. Leased Marketing Premises

"Leased marketing premises" are marketing premises owned, leased or in any way controlled by a franchisor and which the franchisee is authorized or permitted, under the franchise, to employ in connection with the sale, consignment, or distribution of motor fuel.

### G. Fail to Renew and Nonrenewal

The terms "fail to renew" and "nonrenewal" refer to a failure to reinstate, continue, or extend a franchise relationship (1) at the conclusion of the term, or on the expiration date, stated in the relevant franchise, (2) at any time, in the case of the relevant franchise which does not state a term of duration or an expiration date, or (3) following a termination (on or after June 19, 1978) of the relevant franchise which was entered into prior to June 19, 1978 and has not been renewed after such date.

## II. Legal Remedies Available to Franchisee

The following is a more detailed description of the remedies available to the franchisee if a franchise is terminated or not renewed in a way that fails to comply with the Act.

### A. Franchisee's Right to Sue

A franchisee may bring a civil action in United States District Court against a franchisor who does not comply with the requirements of the Act. The action must be brought within one year after the date of termination or nonrenewal or the date the franchisor fails to comply with the requirements of the law, whichever is later.

### B. Equitable Relief

Courts are authorized to grant whatever equitable relief is necessary to remedy the effects of a violation of the law's requirements. Courts are directed to grant a preliminary injunction if the franchisee shows that there are sufficiently serious questions, going to the merits of the case, to make them a fair ground for litigation, and if, on balance, the hardship which the franchisee would suffer if the preliminary injunction is not granted will be greater than the hardship which the franchisor would suffer if such relief is granted.

Courts are not required to order continuation or renewal of the franchise relationship if the action was brought after the expiration of the period during which the franchisee was on notice concerning the franchisor's intention to terminate or not renew the franchise agreement.

### C. Burden of Proof

In an action under the Act, the franchisee has the burden of proving that the franchise was terminated or not renewed. The franchisor has the burden of proving, as an affirmative defense, that the termination or nonrenewal was permitted under the Act and, if applicable, that the franchisor complied with certain other requirements relating to terminations and nonrenewals based on condemnation or destruction of the marketing premises.

### D. Damages

A franchisee who prevails in an action under the Act is entitled to actual damages and reasonable attorney and expert witness fees. If the action was based upon conduct of the franchisor which was in willful disregard of the Act's requirements or the franchisee's rights under the Act, exemplary (punitive) damages may be awarded where appropriate. The court, and not the jury, will decide whether to award exemplary damages and, if so, in what amount.

On the other hand, if the court finds that the franchisee's action is frivolous, it may order the franchisee to pay reasonable attorney and expert witness fees.

### E. Franchisor's Defense to Permanent Injunctive Relief

Courts may not order a continuation or renewal of a franchise relationship if the franchisor shows that the basis of the non-renewal of the franchise relationship was a determination made in good faith and in the normal course of business:

(1) To convert the leased marketing premises to a use other than the sale or distribution of motor fuel;
(2) To materially alter, add to, or replace such premises;
(3) To sell such premises;
(4) To withdraw from marketing activities in the geographic area in which such premises are located; or
(5) That the renewal of the franchise relationship is likely to be uneconomical to the franchisor despite any reasonable changes or additions to the franchise provisions which may be acceptable to the franchisee.

In making this defense, the franchisor also must show that he has complied with the notice provisions of the Act.

This defense to permanent injunctive relief, however, does not affect the franchisee's right to recover actual damages and reasonable attorney and expert witness fees if the nonrenewal is otherwise prohibited under the Act.

Issued in Washington, D.C. on June 12, 1996.

Form BJC-(R)-PMPA (10-2001)

Page **12** of **12**

Initial _____